I-HENG HSU (N.Y. Reg. 4904033)
MICHAEL S. TYE (D.C. Bar. No. 488101)
Trial Attorneys
U.S. Department of Justice, Civil Division
P.O. Box 875, Ben Franklin Station
Washington D.C. 20044-0875
Tel: (202) 616-3619
Email: I-Heng.Hsu@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>             Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>ENERGY, *et al*.,<br><br>             Defendants. | Case No. 6:25-cv-01458-MTK<br><br><br>DEFENDANTS' MEMORANDUM<br>OF LAW OPPOSING PLAINTIFFS'<br>PROPOSED ORDER |

## INTRODUCTION

At the conclusion of the September 29, 2025 oral argument, the Court stated that it would grant partial summary judgment in favor of the States[1] and hold that the Policy Flash is contrary to law. It directed the States to submit a proposed order and legal reasoning supporting the requested relief. On October 8, 2025, the States submitted their Supplement Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, Doc. No. 76 ("Pls. Memo") and attached a proposed order, Doc. No. 76-1 (the "Proposed Order"). As we explain below, the States have failed to support the relief they request in the Proposed Order.[2] Assuming that the Court issues a declaratory judgment that the Policy Flash is contrary to law, the only appropriate remedy is vacatur of the Policy Flash solely with respect to States that are party to this lawsuit.

## ARGUMENT

If the Court decides that it has jurisdiction and that the Policy Flash is contrary to law, any remedy provided to the States must be limited consistent with controlling precedent. Although the Administrative Procedure Act ("APA") provides that courts may set aside agency actions found to be contrary to law, 5 U.S.C. § 706(2), equitable principles continue to apply to the remedies that courts may provide. Vacatur, as an equitable remedy, must be limited to the parties and the issues before the court. And injunctive relief would be improper because the States have not proven that such drastic relief is necessary to provide complete relief and they have failed to provide evidence to support any entitlement to such relief.

---

[1] Capitalized terms not otherwise defined herein shall have their meanings as defined in the Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, Doc. No. 55 (the "Opposition").

[2] Defendants maintain and preserve all arguments set forth in their prior briefing and argument in this matter.

## I.     If the Court Vacates the Policy Flash, Vacatur Should Be Limited.

The States request the Court vacate the Policy Flash "in its entirety." Proposed Order at ¶ 2. However, vacatur, if any, must be party-specific. As we have previously explained, remedies "operate with respect to specific parties." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted). A universal vacatur of the Policy Flash in its entirety is contrary to this principle. Additionally, equitable relief should not be "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Vacating the Policy Flash in its entirety goes beyond what is necessary to provide complete relief to the Plaintiff States. Thus, if the Court vacates the Policy Flash, it should only do so with respect to the Plaintiff States.[3]

In addition to requesting vacatur of the Policy Flash, for the first time in this litigation the States also argue that the Court should "set aside any rejections to Plaintiffs' award applications, whether formal or informal, issued pursuant to or in reliance on the Policy Flash." Proposed Order at ¶ 3. Plaintiffs' request for that relief is included in the portion of their memorandum addressing injunctive relief, but setting aside an agency action is in the nature of vacatur—not injunction. *Corner Post, Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring) ("When a federal court sets aside an agency action, the federal court vacates that order—in much the same way that an appellate court vacates the judgment of a trial court."). Vacatur of some indeterminate set of alleged DOE "rejections" of Plaintiffs' financial

---

[3] To avoid repetition, we incorporate by reference arguments previously made in our brief opposing partial summary judgment. Opposition at 28-30.

award applications is both inappropriate as a legal matter and problematic from a practical standpoint.

First, vacatur of some amorphous set of DOE "rejections to Plaintiffs' award applications," many of which were initial and led Plaintiffs to resubmit applications, is unnecessary because vacatur of the Policy Flash with respect to the Plaintiff States is sufficient to provide full relief. Following vacatur of the Policy Flash, Plaintiff States could request that DOE modify their final 2025 State Energy Program ("SEP") and/or Weatherization Assistance Program ("WAP") awards. Requests to remove the award term imposed by virtue of Policy Flash 2025-25 (*i.e.*, "the recipient is limited to a maximum percentage of 10% of the Total Award Amount for reimbursement of indirect costs and fringe benefits costs") would be approved, as the Policy Flash that served as the basis for imposing this term will have been vacated. And DOE would review and make determinations regarding any other requests for SEP or WAP award modification, including budget modifications, in the ordinary course. Such requests would be evaluated for compliance with applicable requirements, but without regard to Policy Flash 2025-25. Accordingly, vacating the Policy Flash with respect to the Plaintiff States and allowing Plaintiff States to request modifications to their 2025 SEP and WAP awards without regard to the Policy Flash will provide complete relief.

Second, Plaintiffs do not specify the universe of agency actions that they believe constitute "rejections to Plaintiffs' award applications, whether formal or informal, issued pursuant to or in reliance on the Policy Flash." The minimal factual allegations regarding DOE award rejections in the record before this Court involve SEP and WAP, but notably, Plaintiffs' proposed order does not limit the requested "setting aside" of DOE rejections to those grant programs. And even regarding SEP and WAP, applications are routinely rejected in the PAGE

system, often multiple times, for a wide variety of different reasons, making it difficult to discern which rejections were "pursuant to or in reliance on the Policy Flash" rather than for some independent reason not at issue in this litigation. *See, e.g.*, Gerstman Decl. ¶¶ 6 (53 of 56 SEP applications were initially rejected in PAGE in 2024, despite DOE ultimately approving 100% of applications from State governments). Moreover, as the States have noted, DOE's rejection of award applications is typically "informal." *See* Pls. Memo at 4 (citing Gerstman Decl., Doc. No. 57 at ¶ 11). None of the States' award applications had been formally rejected by DOE in a final decision. "This informal back and forth between financial assistance staff for state applicants and [DOE] is a standard process to ensure applications are complete and ready for a decision by DOE under applicable regulations." Gerstman Decl. at ¶ 11; *see also* Schroeder Decl., Doc. No. 58 at ¶ 10 (describing informal process for Weatherization Assistance Program). To the extent that any award application was rejected solely on account of the Policy Flash during this informal back-and-forth process, it would follow that DOE would no longer be able to reject an award application "pursuant to or in reliance on the Policy Flash" during this informal back and forth process once the Court vacates the Policy Flash. Likewise, even assuming, *arguendo*, a rejection became "formal" (an assumption Defendants contests because "[n]o state application since 2019 has been rejected in finality," *see* Gerstman Decl. at ¶ 11), DOE regulations provide procedures for administrative review of such decisions. *See*, *e.g.*, 10 C.F.R. § 420.19 (providing administrative review for SEP); 10 C.F.R. § 440.30 (providing administrative review for WAP). Plaintiffs have not challenged these rejections pursuant to the APA or identified each of these rejections in the Complaint or any other filings in this case. Plaintiffs' vague and sweeping request for the Court to "set aside" some unknown quantity of non-final DOE agency actions is inappropriate.

Finally, Plaintiffs' demand for the Court to set aside prior "rejections" of award applications is especially unworkable for SEP and WAP awards because, after DOE returned certain applications in the PAGE system, numerous Plaintiff States submitted amended award applications *and obtained final awards* for Award Year 2025.  *See, e.g.*, Pinsky Decl., Doc. No. 41 ¶¶ 12-14.  Plaintiffs do not explain what they want to have happen to a final SEP or WAP award for Award Year 2025 if the Court "sets aside" all prior DOE actions to reject earlier, now-superseded versions of Plaintiffs' SEP or WAP award applications.[4]

## II.    The States Are Not Entitled to Injunctive Relief.

"An injunction is a drastic an extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted).  If a "less dramatic remedy … [is] sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted."  *Id.* at 165–66.  Moreover, because vacatur upon entry of a declaratory judgment would provide complete relief, the additional extraordinary remedy of a permanent injunction is not warranted.  Indeed, this was the precise holding of Judge Murphy in *Association of American Universities v. Department of Defense*, -- F.3d --, 2025 WL 2899765 (D. Mass. Oct. 10, 2025).  The Court explained that "[a]n injunction would have no additional, 'meaningful practical effect' [] where an order declaring unlawful and vacating the Policy would fully resolve the parties' dispute and prevent injury to Plaintiffs."  *Id.* at *30.  Similarly, Judge Talwani in *Association of American Universities v.*

---

[4] Defendants note that setting aside an existing contract would implicate relief that is beyond this Court's jurisdiction.  28 U.S.C. § 1491(a)(1); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004) (holding the Tucker Act "impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA); *Burgos v. Milton*, 709 F.2d 1, 3 (1st Cir. 1983); *Tortorella v. United States*, 486 F. Supp. 2d 159, 161 (D. Mass. 2007); *Glaskin v. Klass*, 996 F. Supp. 67, 72 (D. Mass. 1998).

*National Science Foundation*, -- F.3d --, 2025 WL 1725857 (D. Mass. June 20, 2025), reached

the same result in declining to impose injunctive relief, reasoning that "[e]njoining Defendants

from implementing or enforcing a policy that has been vacated would be duplicative." *Id.* at

\*23. The Court should reach the same conclusion here.

### A.    The States Have Not Demonstrated Irreparable Harm.

The States attempt to elide the requirement to demonstrate irreparable harm. According

to the States, the harm consists of "forc[ing]" the States "to reduce staffing and programming"

and preventing the States from "meet[ing] their energy goals." Pls. Memo at 3. And they assert,

without support, that "that the Policy Flash applies identically to all Plaintiff States and will

result in the same types of irreparable harms." *Id.* These bare assertions do not come close to

meeting their burden.

As Defendants have previously demonstrated, economic injury typically does not support

a finding of irreparable harm. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,

944 F.2d 597, 603 (9th Cir. 1991). Moreover, "[a] finding of irreparable harm must be grounded

on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future

may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st

Cir. 2004). In other words, the irreparable harm must be "actual and imminent", not remote and

speculative. *See Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991).

Furthermore, it is bedrock law that in considering whether the States have met the

"exceedingly high burden" of demonstrating that, absent the injunctive relief they seek, they are

likely to suffer irreparable harm, the Court should not consider the States in the collective.

Instead, each plaintiff State must make a clear showing of irreparable harm on its own. *See, e.g.*,

*Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485–86 (3d Cir. 2000) (partially vacating a

preliminary injunction because "[i]nstead of making a case-by-case determination that each plaintiff demonstrated irreparable harm . . ., the court dealt with the plaintiffs as a unit and concluded that because several of them probably risked irreparable harm, that was sufficient to satisfy the prong of the preliminary injunction test.").

The States fail to meet these standards for several reasons. *First*, several of the Plaintiff States submitted no declaration or other evidence to support claims of irreparable harm (*i.e.*, Maine, Nevada, New Mexico, and District of Columbia) and the Court lacks any evidentiary basis upon which to find they will be irreparably harmed. Furthermore, with respect to the States that have submitted a declaration, the record in this matter reflects that States' circumstances vary significantly. For instance, under SEP applications in 2024, more than 62% of New York's award went to indirect and fringe costs, while none of Arkansas' award went to indirect and fringe costs. *See* Opposition at 6 (Doc. No. 55); Gerstman Decl. at ¶ 8 (Doc. No. 57). The States do not address these differences, but rather simply assert an entitlement to a broad injunction that is not tailored to any proven irreparable injury. Such an approach is impermissible. *See*, *e.g.*, *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990) (courts must "closely tailor injunctions to the harm that [it] address[es]").

*Second*, because the Policy Flash applies on a forward-looking basis, it cannot have caused past injury or cause future injury if set aside by order of this Court. That is, if the Court sets aside the Policy Flash, the States' articulated harms will not occur. States can have no claim based on a need to reduce staff or programming after an order has set aside the Policy Flash. Nothing prevents the States from requesting amendments of their budgets under DOE awards after the Policy Flash is vacated and the States have not demonstrated any likelihood that Defendants will take action inconsistent with the Court's decision. *See*, *e.g.*, *New York v. Wolf*,

No. 20-CV-1127, 2021 WL 185190, at *2 (S.D.N.Y. Jan. 19, 2021) (declining to issue permanent injunction where Plaintiffs "fail to demonstrate vacatur and remand is insufficient to redress their injuries" considering the low risk of the agency decision being re-issued). Nor does anything concerning the implementation of the Policy Flash to date support the States' demands for injunctive relief. The States have the burden to demonstrate that DOE *would continue to implement* the Policy Flash in a manner that caused them irreparable harm even if it were vacated by the Court. They have not and cannot. As Defendants have previously demonstrated, the Policy Flash did not reduce the total funding for the States. Thus, following vacatur of the Policy Flash, there plainly would be no residual need to reduce staff or programming and no irreparable harm as courts found in the *National Science Foundation* and *Department of Defense* cases discussed above.

*Third*, to the extent that the States rely on alleged harms that are downstream of payment or funding such as failing to "meet energy goals," those alleged irreparable harms would not come to pass if the policy is vacated and, in any event, are impermissibly speculative and unsubstantiated. *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6–7 (1st Cir. 1991) (holding that "irreparable harm is not assumed; it must be demonstrated") (quoting *Pub. Serv. Co. of New Hampshire v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir. 1987)). The States have not come close to demonstrating that the vague potential future harm of preventing states from meeting "energy goals" creates imminent and non-speculative harm.

For all of these reasons, the Court should not grant the "drastic and extraordinary remedy" of permanent injunction. Less drastic remedies are more than "sufficient to redress [the] injury," and thus "no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co*., 561 U.S. at 165–66.

**B.      The Court Cannot and Need Not "Set Aside" Rejections of States' Proposals.**

As discussed above, to "set aside" an agency action like DOE's alleged rejection of a financial award application is an equitable remedy in the nature of vacatur, not injunction.  But even construing this relief as injunctive, as Plaintiffs seem to believe it is, the States fail to demonstrate irreparable harm.  That failure alone is sufficient for the Court to decline to issue injunctive relief.  In addition, here, the injunctive relief requested by the States, which includes "to set aside any rejections to Plaintiffs' award applications, whether formal or informal, issued pursuant to or in reliance on the Policy Flash" is unnecessary to afford them complete relief.

It is well-settled that "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion" by the court.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The party seeking permanent injunction "must satisfy the court that relief is needed." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).  If the Court vacates the Policy Flash, an injunction setting aside the "rejections . . . . whether formal or informal, issued pursuant to or in reliance on the Policy Flash" is unnecessary, as explained below, and should not be included within the Court's relief.

As explained above and as the States have noted, DOE's rejection of award applications is typically "informal" and none of the States' award applications had been formally rejected by DOE in a final decision.  *See supra* at 4-5.  Thus, to the extent that any award application was rejected solely on account of the Policy Flash during this informal back-and-forth process, it would follow that DOE would no longer be able to reject an award application "pursuant to or in reliance on the Policy Flash" during this informal back and forth process once the Court vacates the Policy Flash.  *Id.*  In addition, even where a rejection might have become "formal" (notwithstanding that "[n]o state application since 2019 has been rejected in finality," *see*

Gerstman Decl. at ¶ 11), DOE regulations provide procedures for administrative review of such

decisions.  *Id.*  The States' demand for injunctive relief implies that DOE would continue to rely

on the Policy Flash during either the informal processes or the administrative review processes,

but such implication is baseless.  Presumption of regularity "must be given to administrative

decisions" and DOE is entitled to that presumption here.  *Daly v. Volpe*, 514 F.2d 1106, 1111

(9th Cir. 1975).  If the Court vacates the Policy Flash, then the Policy Flash would no longer be a

factor in any administrative review of formal rejections, if any, making the requested injunctive

relief redundant.

### C.    Declaratory Judgment is Sufficient to Provide Complete Relief.

The States further demand that the Court permanently enjoin DOE from implementing

the Policy Flash or "a substantially similar policy that caps states and local government

reimbursement of indirect and/or fringe costs in Plaintiff States."  Proposed Order at ¶ 4.  This

extreme request demonstrates further how unnecessary injunctive relief would be in this case.

As an initial matter, the wording for this request is vague and impermissibly infringes on

discretion allocated to DOE by Congress.  *See, e.g.*, 42 U.S.C. § 6325(a) (providing that the

Secretary "may prescribe such rules as may be necessary or appropriate to carry out this

authority under this part [enacting SEP]); 42 U.S.C. § 6865 (tasking the Secretary to insure

proper allocation of financial assistance under WAP).  It is unclear what would make another

policy "substantially similar" to the Policy Flash, and the requested relief could be read to bar

any limitation on indirect and/or fringe costs.  Such an injunction conflicts with the above

statutes and regulations that specifically allow limitations on costs and deviations from indirect

cost rates.  *See, e.g.*, 2 C.F.R. § 200.414(c) (allowing deviation from negotiated indirect cost

rates); 10 C.F.R. § 420.18 (setting out expenditure prohibitions and limitations for SEP).

Moreover, considering that the States are seeking a declaratory judgment, the States will have complete relief without this overbroad injunction. A declaratory judgment sets out the "rights and other legal relations of any interested party seeking such declaration . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). Accordingly, were the Court to issue a declaratory judgment on the merits of the Policy Flash, the judgment would be "conclusive of rights, questions, and facts in issue, as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir. 1956). In other words, a declaratory judgment has the effect of res judicata in subsequent proceedings if DOE attempted to re-implement the Policy Flash. *See id.* at 242. With a declaratory judgment, if the States believed that a future DOE policy runs afoul of the declaratory judgment, they "will have ample opportunity to challenge it, and to seek appropriate [] relief, if and when such a decision is made." *Monsanto Co.*, 561 U.S. at 164; *see also Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 2025 WL 1725857, at *24 (finding that a "declaratory judgment obviates the need to enjoin defendants from reimplementing a substantively identical policy"). Indeed, this is the result reached in *Associations of American Universities v. Department of Energy*, Case No. 1:25-cv-10912-ADB, Doc. No. 71 (D. Mass. June 30, 2025). While the United States disagrees with that decision and has appealed, it is important to note that the district court vacated the policy capping indirect cost rate without issuing injunctive relief in the final judgment (despite having granted a preliminary injunction). Accordingly, the Court should not issue the requested injunction.

      **D.**     **Injunctive Relief is Contrary to the Public Interest.**

The overbroad and unnecessary injunctive relief demanded by the States effectively asks this Court to bar DOE from ever imposing any limit on indirect costs or fringe benefits. But DOE plainly possesses statutory and regulatory authority that allow it to determine these rates. Entry of the Proposed Order would effectively impose the States' assessment of what is in the public interest in place of DOE's own views on how to carry out its statutory mandate consistent with Office of Management and Budget cost principles. In the allocation of federal funds, the Court should not substitute the States' views concerning what would best serve the public interest for the views of the federal government. Therefore, injunctive relief beyond vacatur and declaratory relief is unwarranted.

III.     **A Remedy Order Should Not Mandate the Delivery of Written Notices, But If It Does, It Should Account for the Lapse of Funding for the Federal Government.**

The States further demand that the Court order that "[w]ithin five days of this Order, Defendants' attorneys shall provide written notice of this Order to all Defendants and their employees or contractors with responsibility for administering funding to states and local governments and shall file a copy of the notice on the docket." Proposed Order at ¶ 6. This demand is excessive in scope and more burdensome for the Defendants than is necessary to provide complete relief to the States. In its remedy order vacating Policy Flash 2025-22, the district court in *Association of American Universities v. DOE* did not order Defendants' counsel to distribute a written notice or file proof of such notice with the court and such a requirement should not be issued here. Plaintiffs provide no reason to believe Defendants would not, as they did in that prior litigation, take appropriate steps to comply with a remedy order that contains declaratory relief and vacates the Policy Flash with respect to the Plaintiff States. To the extent that the Court determines it appropriate to compel Defendants' counsel to deliver written notice of the remedy order or file evidence of such written notice, the notice should be provided only to

DOE's employees and contractors with responsibility for administering financial awards to states and local governments.

Finally, the appropriation for the federal government lapsed as of September 30, 2025. Plaintiffs' demand for DOJ to provide written notices, which would require coordination with DOE employees, within five days of the entry of an order may not be possible at the time such an order issues. Therefore, if the Court issues a remedy order that requires DOJ to deliver and file written notices within a particular period of time, Defendants respectfully request at least seven (7) days after the end of the lapse in appropriations or seven (7) days after entry of an order, whichever is later.

## CONLUSION

For the above reasons, the Court should limit the remedy and not enter any permanent injunction against the United States.

Dated: October 15, 2025                     Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            SCOTT E. BRADFORD
                                            United States Attorney

                                            KIRK T. MANHARDT
                                            Director
                                            Commercial Litigation Branch

                                            MARC S. SACKS
                                            Deputy Director

                                            TERRANCE A. MEBANE
                                            Assistant Director

                                            s/ *Michael S. Tye*
                                            I-Heng Hsu (N.Y. Reg. 4904033)
                                            Michael S. Tye (D.C. Bar. No. 488101)
                                            Trial Attorneys
                                            U.S. Department of Justice, Civil Division
                                            P.O. Box 875, Ben Franklin Station
                                            Washington D.C. 20044-0875
                                            Tel: (202) 305-2419
                                            Email: Michael.Tye@usdoj.gov

                                            *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 15, 2025                                   s/ *Michael S. Tye*
                                                          Michael S. Tye